UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

|  |  |
|---|---|
| NATHIFA A. WHITTIER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:23-cv-702 (LRV) |
| ) | |
| KNIGHT FACILITIES ) | |
| MANAGEMENT, INC., *et al.*, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

This case arises from an incident at Defendant Transurban USA (Operations), Inc.'s ("Transurban") office in Alexandria, Virginia. On March 30, 2021, Plaintiff Nathifa Whittier was performing her maintenance and custodial duties as an office cleaner for RW Carpet Cleaning & Floor Services ("RW Carpet"), when a paper towel dispenser dislodged from a bathroom wall and injured her. (Dkt. No. 1-2 ¶ 3.) On March 28, 2023, Plaintiff filed the original complaint in the Circuit Court for Alexandria, Virginia against Defendants Transurban and Knight Facilities Management, Inc. ("KFM")—the facilities manager hired by Transurban—claiming negligence and asserting $300,000 in damages. (*Id.* at 3.) Plaintiff's complaint alleges that Defendants "owed a duty to the Plaintiff, as an invitee upon the premises, to maintain the premises in a safe, careful, and prudent manner," and that they breached this duty by permitting a "dangerous and hazardous condition to be present which they knew or should have known created a dangerous and hazardous condition for individuals such as the Plaintiff." (*Id.* ¶ 5.) Defendants filed their respective answers to the complaint on May 19 and June 19, 2023. (Dkt. Nos. 1-3, 2.)

1

On May 26, 2023, Defendants removed the action from state court. (Dkt. No. 1.) Discovery in this matter closed on November 10, 2023. (*See* Dkt. No. 4.) On November 22, 2023, each Defendant filed a motion for summary judgment, asserting that there is no genuine dispute of material fact and that Plaintiff's claims fail as a matter of law. (Dkt. Nos. 21–22.) Plaintiff did not respond to the Defendants' summary-judgment motions. On January 4, 2024, the Court advised the parties that it considered Defendants' motions to be unopposed and that it would decide those motions on the briefing without oral argument.[1] (Dkt. No. 23); *see* L. Civ. R. 7(J). Accordingly, Defendants' motions for summary judgment are now ripe for disposition.

### I. Factual Background

The following facts are undisputed. On March 30, 2021, the date of the incident, Defendant Transurban occupied the building at 6440 General Green Way in Alexandria, Virginia, where the incident took place. (Dkt. No. 22-1 at 2.) In 2018, Transurban contracted with KFM for facilities management services at the building. (*Id.*) Under Task Order No. 1 to the services agreement between Defendants, KFM was responsible for sub-contracting with other entities to provide the services listed in the scope of work, including tasks related to cleaning the office space. (Dkt. No. 22-2 at 1, 6.) Consistent with these responsibilities, KFM contracted with RW Carpet for evening office cleaning, among other services. (Dkt. No. 22-3 ¶¶ 5, 7.) Defendant KFM provided its own cleaning services during daytime working hours. (Dkt. No. 22-3 ¶ 6; *see also* Whittier Depo. at 42:7–10 (Dkt. No. 22-5).)

Plaintiff started working for RW Carpet at the Transurban office in August 2019. (Whittier Depo. at 32:6–11.) The Transurban building has two floors and seven restrooms. (*Id.* at 32:13–21.)

---

[1] On September 1, 2023, upon the consent of all parties (*see* Dkt. Nos. 8–10), the Court referred this matter to the undersigned magistrate judge to conduct all proceedings and order the entry of a final judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (Dkt. No. 11.)

Plaintiff's responsibilities included cleaning the restrooms, wiping down conference rooms, sweeping and mopping floors, pulling trash, and refilling paper products. (*Id.* at 38:3–12, 52:5–7.) Plaintiff generally worked from 4:00 p.m. to 8:00 p.m. Monday through Friday and sometimes on weekends. (*Id.* at 36:2–3, 41:20.) As part of her duties, Plaintiff refilled the paper towel dispensers in the office restrooms every night that she worked. (*Id.* at 60:11–16.) To refill the dispensers, Plaintiff would open the panel of the wall-mounted dispenser, remove the trash from the built-in trash can, fill the paper towels, and then close and lock the dispenser. (*Id.* at 55:16–25.)

On March 30, 2021, the date of the incident, Plaintiff was cleaning a unisex bathroom on the second floor of the Transurban building. (*Id.* at 53:7–9, 54:3–4.) Plaintiff emptied the trash, filled the dispenser, and closed and locked the dispenser. (*Id.* at 55:19-25, 56:4–6.) Plaintiff had turned her back to the dispenser and was facing away from it when she heard a creaking noise. (*Id.* at 56:6–12, 56:12–16.) Plaintiff then looked behind her and saw the dispenser "coming out of the wall." (*Id.* at 56:6–12.) Plaintiff turned to her left and pushed the dispenser back into the wall. (*Id.* at 56:13–18.) She then left the bathroom to alert a Transurban employee about the dispenser. (*Id.*)

Plaintiff testified that on the evening of March 30, 2021—and in the eighteen months since she started working at the Transunion facility in August 2019—she had never felt or seen that the dispenser at issue was loose, unstable, or otherwise not working as intended. (*Id.* 60:17–61:9.) Plaintiff was not aware of any other person having an issue with, or complaining about, the dispenser that allegedly injured her. (*Id.* at 61:14–19, 67:12–16.) Plaintiff testified, however, that she was aware of a separate incident that occurred in December 2020 with a different paper towel dispenser in a different bathroom on the first floor of the office. (*Id.* at 62:4–7, 63:6–11.) The December 2020 incident involved a different employee. (*Id.* at 63:18–20.) After the December 2020 incident occurred (i.e., from December 2020 through March 2021), Plaintiff wiped down, opened, emptied the trash, filled the paper towels, and closed and locked that dispenser without a problem. (*Id.* at

3

66:1–8, 68:11–16.) Other than these two incidents, Plaintiff was not aware of any person having an issue with, or complaining about, any other dispenser in the Transurban office. (*Id.* at 68:17–24.)

## II. Legal Standard

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material "if it might affect the outcome of the suit under the governing law." *Vannoy v. Fed. Reserve Bank of Richmond*, 827 F.3d 296, 300 (4th Cir. 2016) (quoting *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013)). The Court may not consider inadmissible evidence on a motion for summary judgment. *Giles v. Nat'l R.R. Passenger Corp.*, 59 F.4th 696, 704 (4th Cir. 2023). "If a party . . . fails to properly address another party's assertion of fact," the Court "may . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3).

## III. Analysis

As an initial matter, the Court finds that there is no genuine dispute of material fact. Defendants' motions are unopposed. In support of their motions, Defendants have submitted Plaintiff's deposition testimony and her answers to Defendants' Interrogatories, both of which contain the specific factual information on which Defendants' motions rely. *See* Fed. R. Civ. P. 56(c)(1). Thus, because Plaintiff has not contested Defendants' assertions of fact, and based on the record presented, the Court finds there are no disputed issues of material fact. *See* Fed. R. Civ. P. 56(e).

Next, the Court finds that both Defendants are entitled to judgment as a matter of law. To establish negligence under Virginia law, "a plaintiff must prove the following elements: (1) duty,

(2) breach of that duty by not meeting the standard of care, (3) proximate cause, and (4) damages." *Federico v. Lincoln Mil. Hous., LLC*, 127 F. Supp. 3d 623, 641 (E.D. Va. 2015) (citing *McGuire v. Hodges*, 273 Va. 199, 205–06 (2007)); *see also Atrium Unit Owners Ass'n v. King*, 266 Va. 288, 585 S.E.2d 545, 548 (2003) (plaintiff must show "the existence of a legal duty, a breach of the duty, and proximate causation resulting in damage"). In premise liability actions such as this, an "owner of real property . . . owes a common law duty to its invitee (1) to use ordinary care to have the premises in a reasonably safe condition for the invitee's use consistent with the invitation, and (2) to use ordinary care to warn its invitee of any unsafe condition that was known, or by the use of ordinary care should have been known, to the owner."[3] *AlBritton v. Commonwealth*, 299 Va. 392, 405 (2021) (quoting *Fobbs v. Webb Bldg. Ltd.*, 232 Va. 227, 229 (1986)). Thus, to establish a *prima facie* case of negligence, "the plaintiff must introduce evidence of the responsible person's actual or constructive knowledge of a defective condition on the premises." *Id.* (quoting *Grim v. Rahe, Inc.*, 246 Va. 239, 242 (1993)).

Here, Defendant Transurban asserts that it is entitled to summary judgment on Plaintiff's claims because there is "not even a scintilla of evidence" demonstrating that Transurban created, or was on notice of, the allegedly hazardous condition caused by the paper towel dispenser. (Dkt. No. 21 at 5.) Similarly, Defendant KFM asserts that it is entitled to summary judgment because "there is no . . . evidence" that KFM "had actual or constructive knowledge" of the allegedly defective paper towel dispenser. (Dkt. No. 22 at 4.) The Court agrees with Defendants.[4]

---

[3] Defendants do not appear to dispute that Plaintiff was an "invitee," as alleged in Paragraph 5 of the Complaint. *See also, e.g., Franconia Assocs. v. Clark*, 250 Va. 444, 447 (1995) (employee of shopping mall tenant was "invitee").

[4] The Court need not consider KFM's alternative arguments (i.e., that Plaintiff's claim is barred under the Virginia Workers Compensation Act and that Plaintiff's claim against it must lie in contract not tort) because, even if Plaintiff is not precluded from bringing a negligence claim against KFM, her

First, it is undisputed that Defendants lacked actual knowledge of the allegedly hazardous condition posed by the paper towel dispenser. As Defendants correctly assert, Plaintiff never complained to either Defendant about the dispenser that caused her injuries, and she was not aware of any other person making such a complaint. (Whittier Depo. at 60:17–61:9–19, 67:12–16.) Thus, unlike in *AlBritton v. Commonwealth*, 299 Va. 392, 409 (2021), where other individuals had previously warned prison officials "about the damaged steps" that allegedly caused the plaintiff's injury, here, there is no evidence to establish that Defendants had actual knowledge of the allegedly hazardous condition.

Second, nothing in the record establishes that Defendants had constructive knowledge of the allegedly hazardous condition caused by the paper towel dispenser. Under Virginia law, "constructive knowledge or notice of a defective condition of a premise or a fixture may be shown by evidence that the defect was noticeable and had existed for a sufficient length of time to charge its possessor with notice of its defective condition." *Grim v. Rahe, Inc.*, 246 Va. 239 (1993). "Hence, if the evidence fails to show *when* a defect occurred on the premises, the plaintiff has not made out a *prima facie* case." *Id.* (citing *Winn-Dixie Stores v. Parker*, 240 Va. 180, 182 (1990)).

Here, Plaintiff testified that in the eighteen months prior to the incident, including on the night of the incident, she had never seen or felt that the dispenser was loose, unstable, or otherwise dangerous—except at the time it was already coming off the wall. (Whittier Depo. 60:17–22.) Additionally, Plaintiff, who inspected every bathroom paper towel dispenser daily, including the one at issue here, also stated that she had no reason to suspect that it was loose or hazardous (*id.* at 67:5–11). There is, therefore, no evidence establishing *when* the allegedly hazardous condition occurred. Thus, as in *Grim v. Rahe, Inc.*, where the Virginia Supreme Court held that plaintiff's negligence

---

negligence claim must fail.

claim failed because there was "absolutely no evidence as to when the fixture was broken, how it was broken, [and] no evidence that the [defendant] knew about it," here too, Plaintiff's negligence claim must fail for lack of evidence establishing that Defendants had constructive notice of the condition that allegedly caused her injuries. 246 Va. at 242–43.

Accordingly, because the record does not establish that either Defendant had actual or constructive knowledge of the allegedly hazardous condition "such that a reasonable jury could return a verdict for" Plaintiff on her negligence claims, those claims fail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

\* \* \*

Accordingly, it is hereby

**ORDERED** that Defendant Transurban (USA) Operations, Inc.'s Motion for Summary Judgment (Dkt. No. 21) is **GRANTED**; it is further

**ORDERED** that Defendant Knight Facilities Management's Motion for Summary Judgment (Dkt. No. 22) is **GRANTED**.

The Clerk is **DIRECTED** to enter judgment in favor of Defendants.

**SO ORDERED.**

ENTERED: April 19, 2024

/s/ *LRV*
Lindsey Robinson Vaala
United States Magistrate Judge

Alexandria, Virginia